# UNITED STATES

*v.*

# THIRTY QUARTS OF ROEDERER CHAMPAGNE, ETC.

---

San Juan, Admiralty, No. 1130.

THE COURT'S INSTRUCTIONS TO THE JURY.

Customs—Seizure.

    1. A proceeding by the United States against property for nonpayment of customs duties is neither a civil nor a criminal suit; it is analagous to a suit in admiralty.

Same.

    2. In order to forfeit goods for nonpayment of duties, in the hands of a third party, it is necessary to show that the duties were not

United States v. Thirty Quarts of Roederer Champagne.

paid and that the third party knew of this fact or that the circumstances by which they came into his possession should have put him upon his inquiry.

Same.

3. The burden of proving good faith is upon the third party in possession of the goods, and he must establish that the goods did not come into his possession under circumstances which would put him upon his inquiry.

Opinion filed April 26, 1916.

Mr. *Miles M. Martin,* United States Attorney, for the government.

Mr. *F. H. Dexter* for claimant.

HAMILTON, Judge, delivered the following opinion:

1. This case before us is a very singular one in several respects. The law governing the case is unusual. This is not a case where John Smith sues John Jones for a piece of property or for damages for an injury,—an everyday case like that. It is not a case where the United States prosecutes John Smith for smuggling or for anything else. It is a case which is betwixt and between, neither the one nor the other. In fact I do not know that you can say that it is between. It is a case for which the law is perfectly fixed, but is anomalous. It is in some respects something like the admiralty cases, in fact it is in form an admiralty case. An admiralty case, you know, is where a person—it may be the United States, as in a case in this court—sues not an individual, but a piece of property. The United

United States v. Thirty Quarts of Roederer Champagne.

States might sue a steamship. We have a case in this court of the United States suing the steamship Odenwald, alleging certain offenses, and that in itself is not a criminal case. It is a peculiar case, but it is not a criminal case. It is not strictly a civil case either. The law provides that in such cases the government or the party shall not just go ahead and condemn the article in question, but must by advertisement or otherwise give notice to the world so that whoever owns the articles, because everything has an owner in this world, may come in and show if he can that it properly belongs to him and should not be forfeited. That is exactly the procedure in this case. The United States finds certain cases of champagne and other liquors which it alleges have not paid duty. The officers, as was perfectly proper in such a case, seized the articles and took them to the customhouse or to some other proper place of storage, and then they advertised that they had seized these articles for whatever the cause might be, in this case for nonpayment of duties which such articles coming into the United States from foreign countries have to pay. Then the owner can come forward and claim them. The alleged owner has come forward and claimed them in this case. He is the claimant Homar, who has been on the stand, the proprietor or owner of the Hotel Inglaterra.

The first thing that I should call your attention to is that it is not a prosecution against Mr. Homar in any sense of the word. It will be no legal reflection upon Mr. Homar if you should find for the government in this case. It would simply mean that he had bought goods for which he got no good title. That would be all. That happens to us once in a while in this life. And there would be no reflection upon Mr. Homar as a

criminal in any sense of the word. If anything of that sort is contemplated, as to which I am not advised, it would have to be by a separate proceeding before a grand jury, but that is not before us at all. There is no such thing, so far as this jury or so far as I am concerned, in the contemplation of the law.

2. The question before you is, Has the United States the right to forfeit these particular cases of liquor which Mr. Homar claims that he bought under proper circumstances? That is all that is before you. Mr. Homar may be right, and he may be wrong, but in neither case is he held to any criminal charge. But what exactly is this case? It is brought under § 3082 of the Revised Statutes of the United States, Comp. Stat. 1913, § 5785, which for many purposes is the Bible of this court. Pretty much everything that we have to deal with goes back to the Revised Statutes, except where we are called upon to enforce local statutes.

Sec. 3082 provides for two things. It says that a man can be indicted and tried as a defendant in a case if he knowingly brings into the United States goods which the United States has a right to exact duties on, without paying those duties; if he knowingly does that. That is one thing. That is not this case. This case is provided for in another part of the same section. It is this, that if anybody—it does not make any difference who—brings into the United States those liquors without paying duty, and they are found under those circumstances, that then the United States has a right to forfeit them. So you see there must be proof in this case in some way or other that these goods were smuggled into the United States. That must be established in your minds in some way. Now if that is so, and Mr. Homar comes along and says, Well, I didn't know any-

United States v. Thirty Quarts of Roederer Champagne.

thing about that; I bought them honestly under circumstances that would not put me on inquiry, if you are satisfied that that is so, then you would have to find against the United States.

3. There are two things, therefore, that you have to consider, and consider of course under the evidence in the case. Is it shown to your satisfaction that these liquors were smuggled into the United States? You have got to get that into your minds in some way from the proof. If that is not clear in your mind, you need not go any further, of course. If the goods were not smuggled, it would not make any difference whether Mr. Homar bought them or whether he did not buy them. But supposing that is shown to your satisfaction from the circumstances of the case, the next thing would be whether Mr. Homar has shown—and the law puts the burden upon him to show—that he bought these goods not under any circumstances that would put him on inquiry. If he bought them under shady circumstances, to use a slang phrase, that puts him on inquiry, and he is bound as to the first part.

Now as to both facts, they are matters for you. I cannot help you upon them. The district attorney has brought out all the facts in evidence, and it is for you to draw your conclusions from them. There seems to be no dispute as to this, that some one described as a blond man, looking like an American perhaps, but some one unknown to Mr. Homar and whom he has never seen since, came to the Hotel Inglaterra and arranged with the clerk for the sale of certain goods, which purchase Mr. Homar made. These goods, apparently, according to the evidence, were bought at certain prices which aggregated $210. If that amount had been paid, it would seem to conform in a general way to the evidence of value in the case, but that was not paid. I am

United States v. Thirty Quarts of Roederer Champagne.

not saying that the transaction was not bona fide, but I am simply pointing out the different elements of the case. That $210 was not paid; $180 was paid, and $30 was to be paid the next Monday. This was on Saturday. No check was given for that $180, and no receipt was taken for it. On Monday the blond man did not come back. In his stead, a few days afterwards came some detectives. The blond man has not been heard of since. He may be on the Island or he may have gone to the States. That was the transaction. The goods did not come in boxes such as these goods usually come in when bought on the market. They came in boxes holding tomato sauce or some vegetables or something of that sort. Those and some others which do not occur to me right now are the facts which are before you and from them you must judge whether this transaction was bona fide or whether it was not; whether these goods were smuggled or whether they were not.

Now there is this possibility, and it is only right, I think, to call your attention to it. Suppose that these goods had been stolen by the blond man from somebody in San Juan, Luiña, or the Plaza Provision Company, or somewhere else, and had been brought around and sold under the circumstances I have detailed to Mr. Homar. Suppose there was evidence before you that there had been a robbery in San Juan of wines or liquors, and these goods were a part of that robbery, and Mr. Homar had bought them, he would be receiving, perhaps, stolen goods, but at all events he would not have been receiving goods upon which customs duties had not been paid. If there was any such proof as that in the case, these goods could not be taken away from him because the charge here has nothing to do with receiving stolen goods, with which this court would have nothing to

do, but with receiving smuggled goods. If there had been any such evidence, you would have to find for the claimant, but the court charges you that there is no such evidence in the case. I mention it simply because it might occur to your minds, and it would be well enough to have it out of the way.

So that the question before you is simply this, Is there enough before you to cause you to come to the conclusion that these goods got into this Island without paying the duty on them? They are certainly foreign goods. Roederer Champagne and Haig & Haig whisky, etc., are not made in this country, so that that part is a matter of common knowledge. They got here somehow. The burden is on the claimant, under § 909, to prove his side of the case. Has he met that burden? Are you convinced on the evidence in this case that these goods did pay the duties? They had to pay them at some time. Now is there any evidence in the case that they had paid the duty? I can throw no light upon that except to call your attention, as I have, to pretty much all the facts of the case.

With this I will leave the case in your hands. You must be convinced that these were smuggled goods first. In the second place, suppose you are convinced of that, you must be convinced that the claimant bought them under ordinary circumstances. If you think they were smuggled goods and that he did not buy them under usual circumstances, you would have to find for the government. There are those two elements for you to consider.

When you go out you will, of course, first select a foreman, whose duty it is to communicate with the court, and you will find one of these two verdicts, and your foreman will sign it for you. If you hold that the government, under the facts of

VIII. Porto Rico—38.

the case, has proved its side of the case, it will be: We, the jury, find the issues herein in favor of the libellant, that is, the United States, as stated in the libel. Of course you understand that the word libel here has nothing to do with the ordinary libel or slander, but it is simply the name of the particular kind of legal paper. On the other hand, if you find the other way, if to your minds the facts do not justify that verdict, it will be: We, the jury, find for the claimants. In either case your foreman will sign it.